UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JET BLAST, INC.,

    Plaintiff,

v.                                        Case No. 3:24cv469-MCR-HTC

BLUE LAKE SERVICE, LLC, et al,

    Defendants.
_____/

## ORDER

This case is before the Court on five discovery-related motions: (1) Defendant Florida Power & Light Company's ("FPL") motion for protective order (Doc. 20); (2) Plaintiff Jet Blast, Inc.'s ("Jet Blast") motion to compel depositions (Doc. 29); (3) Jet Blast's motion to compel FPL to respond to a request for production (Doc. 30); (4) Defendant Blue Lake Service, LLC's ("Blue Lake") motion to compel the deposition of Jet Blast's corporate representative (Doc. 36); and (5) FPL's motion to compel Jet Blast to respond to a request for production (Doc. 40). After considering the parties' submissions, the arguments and testimony presented at the January 16, 2025 hearing, and the relevant law, the Court concludes FPL's motion for protective order (Doc. 20) should be GRANTED and Jet Blast's motions to compel (Docs. 29 & 30) should be DENIED. In addition,

Blue Lake's motion to compel (Doc. 36) and FPL's motion to compel (Doc. 40) will be TERMINATED AS MOOT based on the agreement of the parties.

I.    **Background**

FPL is a public utility providing electric service to customers in Florida. To prepare for the damage caused by hurricanes, FPL enters into agreements with public and private entities to use their properties as staging sites—locations where FPL can amass people and resources that can be quickly deployed to repair storm damage. In exchange for using these properties, FPL agrees to repair any damage it causes to the staging sites and return the sites to their pre-storm condition.

In 2022, FPL contracted with Blue Lake to restore the staging sites used for Hurricanes Ian and Nicole. Blue Lake subcontracted with Jet Blast to perform restoration work at FPL's staging sites. Jet Blast alleges it has not been paid for all the work it performed at the staging sites and representations made by Blue Lake caused it to lose income it could have earned with Crowder Gulf.

Based on the foregoing, Jet Blast brings: (1) a breach of contract claim against Blue Lake and two associated entities; (2) an unjust enrichment claim against FPL; (3) a quantum meruit claim against FPL; (4) a fraud claim against all Defendants; (5) a negligence claim against all Defendants; (6) a "*res ipsa loquitor*" claim against all Defendants; and (7) a claim against FPL related to violations of

FERC reporting guidelines and the representations FPL made to the Florida Public Service Commission ("FPSC").[1]  Doc. 1.

## II. Discussion

### A. FPL's motion for protective order and Jet Blast's motion to compel depositions.

The first motions before the Court are FPL's motion for protective order (Doc. 20) and Jet Blast's motion to compel depositions[2] (Doc. 29).  These motions relate to Jet Blast's requests to depose FPL's President and CEO, Armando Pimentel, FPL's Vice President of Distribution Operations, Michael Jarro, and FPL's Vice President of Accounting and Controller, Keith Ferguson.  FPL argues the apex doctrine prohibits Jet Blast from deposing these individuals because they are high-level executives, they lack any first-hand knowledge regarding Jet Blast's allegations, and Jet Blast has not exhausted other discovery methods.

"The apex doctrine requires that, the party seeking to compel the deposition of a high-ranking executive, carry the burden of showing that deposition is

---

[1] The Defendants have filed motions to dismiss the complaint which remain pending.  *See* Docs. 9 & 14.
[2] Jet Blast's motion also contains one sentence asking the Court to compel Defendants to respond to Jet Blast's requests for production.  Doc. 29 at 23.  However, the motion does not specify which requests are at issue, which Defendant(s) the requests were directed to, or what basis there is for compelling production.

necessary."³ *Budeanu v. Allstate Ins. Co.*, 2024 WL 4543187, at *1 (N.D. Ga. July 12, 2024) (citation omitted). "Courts generally restrict parties from deposing high-ranking officials … because executives are particularly vulnerable to numerous, repetitive, harassing, and abusive depositions by virtue of their position. Therefore, a party seeking to depose a high ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Hickey v. North Broward Hosp. Dist.*, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014) (citation omitted).

Here, Jet Blast has not made either of the showings necessary to depose Pimentel, Jarro, or Ferguson.⁴ First, Jet Blast has not shown these individuals have unique, non-repetitive, firsthand knowledge about any of the issues in this case. As FPL succinctly notes, the issues in this case are: (1) what work did Jet Blast perform?; (2) what did Blue Lake pay Jet Blast?; and (3) what is the monetary value of Jet Blast's allegedly unpaid work? Doc. 38 at 5.

---

³ Jet Blast relies on Florida Rule of Civil Procedure 1.280(h) and a state court decision interpreting that rule to argue the burden is on FPL to show its executives lack knowledge of the issues in this case, but Florida procedural rules do not apply in this federal action.

⁴ The Court finds, and Jet Blast does not dispute, that these individuals hold positions sufficient for the apex doctrine to apply. *See Budeanu*, 2024 WL 4543187, at *1 ("For the apex doctrine to apply, however, the Court must first determine whether the 'official is sufficiently high ranking to merit protection from giving a deposition[.]'") (citation omitted).

Pimentel has submitted a declaration that explains: (1) he was appointed as FPL's President and CEO in February 2023; (2) he did not work for FPL in 2022 when Jet Blast is alleged to have worked on the staging sites used for Hurricanes Ian and Nicole; (3) he does not have knowledge of the coordination, operation, or restoration of any of the staging sites; (4) he does not have knowledge of FPL's hiring of Blue Lake, the work performed by Blue Lake for FPL, or the invoicing and payments related to Blue Lake's work for FPL; (5) he was not involved in making any decisions regarding Blue Lake's work for FPL; and (6) he does not know what, if any, amounts charged by Blue Lake were (or were not) included in any of FPL's filings with the FPSC. Doc. 20-3. Likewise, Jarro and Ferguson have submitted declarations indicating they do not have any personal knowledge of Blue Lake's work for FPL. Docs. 38-1 & 38-2.

Nevertheless, Jet Blast contends Pimentel, Jarro, and Ferguson do have personal knowledge of issues relevant to its claims. Specifically, Jet Blast says Pimentel: (1) is responsible for the accuracy of FPL's 2022 and 2023 financial reports, including FPL's storm cost recovery revenue, based on certifications he made to the Securities and Exchange Commission ("SEC"); and (2) is responsible for the internal controls FPL employs to detect fraud and ensure the accuracy of its accounting. Doc. 29 at 2-3. With respect to Jarro and Ferguson, Jet Blast's counsel argued at the hearing that these individuals provided testimony in support

of FPL's amended petition to the FPSC to recover storm costs, including costs related to restoring staging sites.[5] Thus, Jet Blast wants to ask these individuals questions about FPL's internal fraud controls and auditing procedures.

However, Jet Blast's arguments are not persuasive. First, despite alleging Pimentel's declaration—which disclaims personal knowledge of Blue Lake's work—"contains assertions directly contrary" to his certifications to the SEC, the Court does not find there is any inconsistency. At the hearing, Jet Blast conceded it had nothing to dispute that Pimentel did not sign the contract with Blue Lake, did not supervise Blue Lake's work, and was not responsible for processing the payments to Blue Lake or contractors generally. And, contrary to Jet Blast's apparent belief, Pimentel's certifications to the SEC do not suggest he has personal knowledge of every transaction underlying FPL's financial reports and verified their accuracy. *See City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 420 (D. Del. 2009) ("The Act, however, does not mandate officers certify that their company's reports are completely devoid of any misleading statements or omissions. Officers are not guarantors of their truth. Instead, they must certify that they personally have no *knowledge* of such misleading statements or omissions.").

---

[5] Jet Blast's 25-page submission barely mentions Jarro and Ferguson (Doc. 29 at 5, 16, 23), and it fails to coherently explain the relevance of their testimony to Jet Blast's claims, or why their testimony should be compelled.

Second, the Court is unable to discern, and Jet Blast was unable to convincingly explain, how testimony about FPL's internal fraud controls and auditing procedures would be relevant to Jet Blast's claims, particularly considering Jet Blast contracted with Blue Lake and not FPL, and an FPL employee testified FPL was not even aware Jet Blast was performing work for Blue Lake.[6] The Court cannot see how FPL's internal controls, whatever they may be, are relevant to whether Jet Blast is entitled to payment for work it claims to have performed as a subcontractor of Blue Lake. Simply put, Pimentel's representations to the SEC about FPL's finances and internal controls do not show he has unique knowledge about FPL's interactions with Blue Lake, or knowledge about any work Jet Blast or Blue Lake performed at the staging sites, such that a deposition of him would be appropriate.

Similarly, the fact Jarro and Ferguson provided general testimony to the FPSC regarding FPL's storms costs for Hurricanes Ian and Nicole does not show a deposition of them is necessary for Jet Blast to pursue their claims. As their declarations explain: (1) the testimony they provided to the FPSC regarding FPL's storm restoration costs related to Hurricanes Ian Nicole was based on information

---

[6] Jet Blast emphasizes Blue Lake submitted $350,000 in "fraudulent" invoices to FPL. However, according to deposition testimony submitted by Jet Blast, Jack Alexander, the FPL employee who reviewed Blue Lake's invoices, flagged those invoices and refused to pay them. Moreover, at the hearing, Jet Blast failed to identify a connection between those invoices and its claims and acknowledged that it was not sure whether the $350,000 of invoices included Jet Blast's work.

and data provided by their subordinates; (2) their testimony to the FPSC provided an overview of the costs incurred and paid for storm restoration activities, and the accounting treatment of those costs; and (3) their testimony did not include any information regarding alleged non-payments to subcontractors. Docs. 38-1 & 38-2. Jet Blast has no information that any of these representations were false or that they included recovery of monies that were not paid by FPL.

Third, even if Pimentel's certifications, or Jarro and Ferguson's testimony to the FPSC, had some tangential connection to Jet Blast's claims, that would not provide a basis for overriding the apex doctrine. *See Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *16 (N.D. Cal. May 9, 2011) ("The mere fact that [the CEO] made public statements, even on issues that Affinity considers relevant to its claims, are insufficient to justify his deposition. Courts have repeatedly denied apex depositions even on a showing that the executive made public statements on relevant issues.") (citations omitted).

Furthermore, Jet Blast has not shown it could not obtain the information it seeks from Pimentel, Jarro, and Ferguson through other types of discovery. While Jet Blast says its requests for production to FPL have "resulted in a blanket denial of any production," Doc. 29 at 5, it does not identify which of those requests concerned the information it seeks from these individuals.

Also, Jet Blast served the subpoena for Pimentel's deposition on November 21, 2024, before any other depositions had been taken and before it had received any written discovery from FPL. *See* Doc. 20-2 (subpoena for Pimentel's deposition). Since that date, Jet Blast has deposed one FPL employee, Jack Alexander, and elicited testimony from him regarding FPL's relationship with Blue Lake and the process by which FPL paid Blue Lake. *See* Doc. 30-3 (rough draft of Alexander deposition transcript). Jet Blast plans to, but has not yet deposed Benjamin Brodbeck, another FPL employee with knowledge about the staging sites. *See* Doc. 20-1. And Jet Blast has only moved to compel FPL to produce documents referencing Jet Blast and the staging sites, Doc. 30, which does not appear related to the testimony it wants to obtain from Pimentel, Jarro, and Ferguson. Lastly, the Court notes Jet Blast has not yet sought to depose FPL's corporate representative, which could obviate the need to depose any of FPL's executives. *See Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC*, 2021 WL 7448237, at *4 (M.D. Fla. Aug. 13, 2021) ("Even though Mr. Shen did handle the initial introduction between the two companies, Aileron has not met its burden to show Mr. Shen has unique, non-repetitive, firsthand knowledge of the facts that could not be obtained through a Rule 30(b)(6) deposition of ALC's corporate representative about Aileron's and ALC's partnership.").

Case No. 3:24cv469-MCR-HTC

As the Court advised the parties at the beginning of the hearing, discovery cannot be used as a fishing expedition and Jet Blast's attempt to uncover some issue with FPL's internal controls or expose FPL for some unknown fraud is far afield of the limited issue of whether Jet Blast is entitled to compensation. Based on the foregoing, Jet Blast has not shown a deposition of Pimentel, Jarro, or Ferguson is warranted at this juncture.[7]

**B.    Jet Blast's motion to compel response to request for production (Doc. 30).**

Jet Blast asks the Court to compel Defendants to "adequately respond" to its requests for production ("RFPs"). However, as an initial matter, Jet Blast's motion specifically discusses only a single request for production (RFP #4) to FPL which Jet Blast says generated a deficient response.[8] Doc. 30 at 2-3. Because Jet Blast's motion does not complain about any other specific discovery requests, the Court will limit its discussion to RFP #4. *See* N.D. Fla. Loc. R. 26.1(D) ("A discovery motion must frame the dispute clearly and, if feasible, must, for each discovery

---

[7] Jet Blast's responded to FPL's December 6, 2024 motion for protective order on December 30, 2024, well after the 14-day deadline, which constitutes an independent basis to grant FPL's motion to preclude the deposition of Pimentel. *See* N.D. Fla. Loc. R. 7.1(E), (H) (stating the deadline for responding to a motion is 14 days and the Court may grant a motion by default if a timely response is not filed).

[8] The request was originally included in a subpoena duces tecum to Jack Alexander, who was deposed on December 17, 2024. Jet Blast suggests FPL skirted its discovery obligations because Alexander "was never shown the notice of deposition and/or the subpoena[.]" Doc. 30 at 4. However, before the deposition, the parties agreed: (1) Alexander was a fact witness and would not be responsible for producing documents in response to the subpoena; and (2) the subpoena would be treated as an RFP to FPL. Doc. 30-2 at 1-2; Doc. 30-3 at 11-12.

request at issue: (1) quote the discovery request verbatim; (2) quote each objection specifically directed to the discovery request; and (3) set out the reasons why the discovery should be compelled.").

RFP #4 asks FPL to produce "any and all emails, text message communications or any other documents referencing jet blast, the hurricane ian and nicole staging sites, including the following list [of ten staging sites] and communicating with co-defendants regarding the same." Doc. 30-2 at 14, 19. FPL responded:

> As it understands this request, and excluding the documents that have been produced by the other parties in this action, FPL does not have custody, possession or control of any documents "referencing jet blast" [sic] related to staging site restoration work it directly performed at the staging sites at issue following Hurricanes Ian and Nicole.

Doc. 30-2 at 4. "As to the other documents in this request," FPL objected to the request as overbroad, not proportional to the needs of the case, and as potentially seeking documents protected from disclosure by the attorney-client privilege and work-product doctrine. *Id.*

Jet Blast argues FPL did not produce all documents responsive to RFP #4. It bases this argument on a text message it received from Brandon Buckles, a representative of Blue Lake, on December 30, 2024. The communication purportedly describes the evidence being compiled by the Defendants for this case:

> [T]hey have signed affidavits, video footage etc from site owners stating days that no one showed up yet it is being billed on invoices. I know you would never intentionally over bill anyone but there is a lot of it. I just don't think it's going to look good in court when these site owners testify that no one was on site working but it's on invoices. … I think they want to show you that information and come to a resolution and pay you for every day that there is verification you were there or if you have some type of proof they were on site. I won't bother you again with this.

Doc. 30-1. Jet Blast claims this message from Buckles shows FPL "is intentionally withholding evidence." Doc. 30 at 4.

The Court disagrees. First, Buckles' message is vague. The message never specifies whether it is Blue Lake, FPL, or one of the other co-defendants who is compiling the described evidence. Indeed, Buckles has submitted a declaration that indicates the word "they" in the message referred to Blue Lake and not FPL; Buckles further states he has no knowledge about whether FPL possesses affidavits or video footage from site owners relating to Jet Blast's work. Doc. 39-2. Furthermore, Alexander submitted a declaration confirming FPL does not have any affidavits or video footage from staging site owners related to FPL's efforts to restore the sites following Hurricanes Ian and Nicole. Doc. 39-3.

Although Jet Blast elicited testimony from Logan Perkins regarding Buckles' text message, that testimony does not detract from Buckles' affidavit and does not show that FPL has any affidavits or site footage to produce. Namely, Perkins testified Buckles never told him that "they" as used in the text message

referred to FPL, only Buckles would know what he meant when he used the term "they," and Buckles would have no way to know what FPL has or does not have in terms of information responsive to RFP #4.

Because Jet Blast's motion to compel FPL to provide documents responsive to RFP #4 was premised solely on Buckles' message, and the evidence submitted by FPL shows Buckles' message has no bearing on the adequacy of FPL's production, Jet Blast's motion to compel is denied.

Also, Jet Blast's motion alleges "FPL's failure to comply with Rule 11 and 34 relative to Discovery requests … is deliberate and constitutes contempt." Doc. 30 at 8. However, Jet Blast's allegation is meritless. First, as explained above, Jet Blast's motion is due to be denied because Jet Blast has not shown FPL failed to comply with Rule 11 or Rule 34. Second, contempt is typically based on finding a party disregarded a court order, but the Court has not previously ordered any Defendant to produce any discovery. *See Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990) ("Every civil contempt proceeding is brought *to enforce a court order* that requires the defendant to act in some defined manner.") (emphasis added); *see also* Fed. R. Civ. P. 37(b)(2)(vii) (stating a court may treat a party's "failure to obey any order" as contempt of court).

Third, while Jet Blast claims "[a]ll parties are under an Order to comply with certification requirements under Rule 11, and the Rules regarding responding to

discovery requests," Doc. 30 at 5, Jet Blast is wrong. The Federal Rules of Civil Procedure are not the same as a court order for purposes of contempt. And Rule 11's certification requirements only apply to representations to the Court; they do not apply to FPL's responses to Jet Blast's RFPs. Indeed, Rule 11 specifically states it "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d).

Moreover, Rule 11 describes the process for seeking sanctions under it and Jet Blast has clearly not followed that process, as it has not filed a separate motion for sanctions nor indicated it has complied with the safe harbor provision. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). Jet Blast's counsel is warned that it is inappropriate to seek sanctions against an opposing party without a legal and factual basis.

Finally, Jet Blast's motion contains a certificate of good faith conference that represents attempts to resolve the issues raised in the motion were futile. Doc. 30 at 11. However, Jet Blast filed its motion one day after receiving Buckles' message, and there is no indication Jet Blast's counsel asked the Defendants

whether they had the materials referenced in the message before filing the motion. As this Court discussed with the parties at the hearing, this Court takes the Local Rules' meet and confer requirements seriously. A meet-and-confer must be meaningful and, generally, an email sent shortly before a motion is filed demanding certain conduct be taken is not sufficient. Parties facing discovery disputes are wise to have an actual phone conversation, or even better, an in-person conversation, when possible. It would seem to the Court that had such a conversation taken place after Jet Blast received Buckles' message, the Court would not have had to intervene.

### C. Blue Lake's motion to compel the deposition of Jet Blast's corporate representative (Doc. 36).

Blue Lake filed a motion to compel Jet Blast to produce its corporate representative for deposition. Although Jet Blast initially objected to the topics Blue Lake proposed for the deposition, at the hearing, Jet Blast withdrew its objections and agreed to produce its corporate representative(s).[9] Therefore, Blue Lake's motion to compel will be terminated as moot.

---

[9] Jet Blast was ordered to file a response to the motion by January 15, 2025, so it could be addressed at the hearing. Jet Blast explained that it did not file a response because it did not intend to oppose the motion. Thus, this appears to be another situation where the parties could have resolved the issue had they had an actual conversation. Also, because the Court prepares for hearings, the parties should advise the Court in advance if an agreement has been reached that no longer necessitates a ruling from the Court.

Case No. 3:24cv469-MCR-HTC

**D.     FPL's motion to compel Jet Blast to respond to a request for production (Doc. 40).**

FPL filed a motion to compel Jet Blast to file a written response to its first request for production. *See* Fed. R. Civ. P. 34(b)(2) (stating a party must file a written response to a request for production). Although the time for filing a response to the motion has not passed, at the hearing Jet Blast agreed to file its written response to the discovery request within five (5) days. Thus, FPL's motion to compel will also be terminated as moot.

Accordingly, it is ORDERED:

1.   FPL's motion for protective order (Doc. 20) is GRANTED, and Jet Blast's motion to compel (Doc. 29) is DENIED. Jet Blast is prohibited from taking the depositions of Armando Pimentel, Michael Jarro, and Keith Ferguson.

2.   Jet Blast's motion to compel (Doc. 30) is DENIED.

3.   Blue Lake's motion to compel the deposition of Jet Blast's corporate representative (Doc. 36) and FPL's motion to compel (Doc. 40) are TERMINATED AS MOOT.

DONE AND ORDERED this 21st day of January, 2025.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**