UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**JET BLAST, INC.,**

　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　CASE NO. 3:24-cv-469-MCR-HTC

**BLUE LAKE SERVICE, LLC, et al.,**

Defendants.
_____/

## ORDER

In the six months following this action's commencement, Plaintiff Jet Blast, Inc. and its counsel, Justin Winch, repeatedly violated Court Orders, the Federal Rules of Civil Procedure, and the Local Rules of this District. It's easier to count the number of times they complied with those dictates than it is to tally the violations.

The trouble started almost immediately. Jet Blast neglected to file an opposition to either of Defendants' motions to dismiss, ECF Nos. 9 & 14, until the Court—nearly three weeks after Jet Blast's response deadline—prompted Jet Blast to show cause "for why the motions to dismiss should not be granted for lack of a response." ECF No. 19. Mr. Winch represented that Jet Blast's failure to oppose the motions to dismiss was due to a combination of "inadvertent oversight" and an unexpected staff shortage. *See* ECF No. 21. Mr. Winch said he had "taken steps to ensure future compliance with all court deadlines, including creating an additional,

written calendaring system dedicated to this matter in the Northern District, alone, and re-engaging with the Court's Scheduling Order and the Local Rules," and promised to "fully comply with any other deadlines or conditions imposed by the Court." *Id.* at 5. Those words were hollow.[1] A month later, Jet Blast filed a motion in violation of the Local Rules, and the Court issued a "final warning," cautioning that "any further non-compliance with Court-imposed deadlines, the Federal Rules of Civil Procedure, or the Court's Local Rules, will result in sanctions, including but not limited to, dismissal of Plaintiff's case with prejudice." ECF No. 31. Contemporaneously, Mr. Winch (on behalf of Jet Blast) was staking out untenable positions on discovery issues and oftentimes wholesale declining to engage in discovery, inundating Magistrate Judge Cannon "with a flurry of discovery-related motions." ECF No. 60 at 3.[2]

That's when things turned from bad to worse. On January 29, 2025, Defendant Blue Lake Service, LLC filed a motion to compel after Jet Blast failed to

---

[1] The Court found Jet Blast's response satisfied its Order to show cause and cautioned that "any further noncompliance with Court-imposed deadlines may result in sanctions, including but not limited to, dismissal of its case with prejudice." ECF No. 23.

[2] The initial volley of discovery motions amongst the parties provided a peek at Jet Blast's and Mr. Winch's disregard for the Federal and Local Rules and Court-imposed deadlines. In these discovery disputes alone: (i) Jet Blast filed an untimely opposition, ECF No. 29; (ii) failed to file an opposition required by Judge Cannon, ECF No. 37; and (iii) failed to provide a timely written response to certain requests for production, ECF No. 40.

provide timely written responses to a set of discovery requests.  *See* ECF No. 44.  Judge Cannon ordered Jet Blast to respond.  *See* ECF No. 45.  Jet Blast didn't.  Judge Cannon subsequently granted the motion and—finding any objections to be waived and Rule 37 sanctions warranted—ordered Jet Blast to "produce all documents responsive to Blue Lake's requests for production" by February 6, 2025.  *See* ECF No. 46.  Yet, when Jet Blast provided its belated response, it included objections to Blue Lake's requests in direct violation of Judge Cannon's ruling.  *Id.*  And, when the production deadline came around, Jet Blast had failed to produce all of the responsive documents in its possession as so ordered.  *See* ECF No. 57 at 5.  Blue Lake renewed its motion to compel on those grounds and sought additional sanctions.  *See* ECF No. 49.  Meanwhile, Defendant Florida Power & Light Company ("FPL") was having its own discovery trouble with Jet Blast.  A familiar pattern surfaced.  Jet Blast had neither responded nor objected to certain interrogatories and requests for production, and FPL moved to compel.  *See* ECF No. 47.

Judge Cannon ordered Jet Blast to respond to both Blue Lake's renewed motion to compel and FPL's motion to compel and required Jet Blast to show cause "why it should not be sanctioned due to its failure to comply with its discovery obligations and failure to comply with Court orders" by February 21, 2025.  *See* ECF

Page 4 of 13

Nos. 48 & 50.  Jet Blast went two for three, meeting the deadlines imposed as to Blue Lake's renewed motion and the show cause order, but failing to respond to FPL's motion to compel as ordered.

At a hearing held on February 24, 2025, Judge Cannon granted the motions to compel and imposed sanctions under Rule 37 corresponding to the attorney's fees Blue Lake and FPL incurred to prosecute the motions.  *See* ECF No. 81-1.  A written order followed two days later.  *See* ECF No. 57.  Judge Cannon was unequivocal in her order: "Jet Blast or its counsel" was required to pay "FPL the amount of $2,760 *as sanctions* for Jet Blast's failure to respond to discovery requests" and "Blue Lake the amount of $5,000 *as sanctions* for Jet Blast's failure to timely produce responsive documents and to comply with this Court's [prior] Order" by March 5, 2025.  *Id.* at 8 (emphasis added).  Jet Blast and Mr. Winch didn't pay the sanctions, request additional time from the Court to comply, or object to Judge Cannon's order under Rule 72(a).  Jet Blast and Mr. Winch didn't lift a finger.

Like clockwork, Blue Lake and FPL moved for additional sanctions—this time requesting dismissal of the Complaint—based on Jet Blast's failure to abide by Judge Cannon's sanctions payment deadline.  *See* ECF Nos. 58 & 59.  And, like Groundhog Day, Judge Cannon gave "Mr. Winch . . . until March 31, 2025, to show cause why his authorization to appear *pro hac vice* should not be revoked based on

CASE NO. 3:24-cv-469-MCR-HTC

his repeated failure to comply with Court Orders, the Federal Rules of Civil Procedure, and the Court's Local Rules," and ordered Jet Blast to file responses to Blue Lake's and FPL's motions by the same date. *See* ECF No. 60 at 6 (citation modified). This time, Jet Blast went one for three, responding to Judge Cannon's order, but neglecting to file any opposition to the motions for sanctions. *See* ECF No. 62. In lieu of opposing the motions as ordered, Jet Blast moved Judge Cannon to reconsider her prior imposition of monetary sanctions. *See* ECF No. 61.[3] That motion, predictably, was destined to fail; Jet Blast merely laundered unfounded (and irrelevant) allegations of litigation misconduct against FPL. *See* ECF No. 61. Judge Cannon swiftly denied it, finding that Jet Blast was "certainly not at liberty to ignore" her prior order and giving "Jet Blast and Winch one *final opportunity*" to pay the sanctions to Blue Lake and FPL by April 29, 2025. *See* ECF No. 66 at 10 (emphasis in original).

Stop if you've heard this before: Neither Jet Blast nor Mr. Winch paid FPL and Blue Lake by the deadline imposed by Judge Cannon. Despite Local Rule 72.1(A)'s explicit instruction that "a magistrate judge's ruling or order in a matter heard and determined by a magistrate judge is the court's ruling and will remain in

---

[3] Local Rule 72.1(A)(2) provides that "the filing of a motion for reconsideration does not stay the magistrate judge's ruling or order." *See* N.D. Fla. Loc. R. 72.1(A)(2) (citation modified).

CASE NO. 3:24-cv-469-MCR-HTC

effect unless and until reversed, vacated, modified, or stayed," Jet Blast and Mr. Winch chose to disobey Judge Cannon's deadline again—instead opting to object, pursuant to Federal Rule of Civil Procedure 72(a), to Judge Cannon's denial of its motion for reconsideration. *See* ECF Nos. 67 & 68. Jet Blast's objection was overruled. *See* ECF No. 83.

For those keeping track at home, Jet Blast and Mr. Winch violated *at least* seven Court Orders and in *at least* six instances failed to abide by the Federal Rules of Civil Procedure and the Local Rules—all in just six months. Accordingly, the undersigned stayed discovery and *sua sponte* scheduled a hearing for July 14, 2025 to provide Jet Blast and Mr. Winch, among other things, an opportunity to explain why they "operated in open and willful defiance of Magistrate Judge Cannon's orders imposing monetary sanctions." ECF No. 73.

At the hearing, it was abundantly clear to the undersigned that Jet Blast and Mr. Winch were aware of the sanctions imposed by Judge Cannon and the dates of compliance, yet willfully chose to ignore them and did so in bad faith. *Cf. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("A party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order."). Their hackneyed explanations fail to excuse their actions and inactions. These explanations fall into

three buckets.  First, Mr. Winch averred at the hearing that he originally did not understand Judge Cannon's ruling on February 26, 2025 as an imposition of sanctions.  Put another way, Mr. Winch asked the Court to suspend reality and believe that he did not understand Judge Cannon's words to mean what they said.  Judge Cannon wrote that "Jet Blast or its counsel" was required to pay "FPL the amount of $2,760 *as sanctions* for Jet Blast's failure to respond to discovery requests" and "Blue Lake the amount of $5,000 *as sanctions* for Jet Blast's failure to timely produce responsive documents and to comply with this Court's [prior] Order."  *See* ECF No. 57 at 8 (emphasis added).  Judge Cannon used some form of the word "sanction" 15 times in her written order and extensively cited and discussed Federal Rule of Civil Procedure 37, which authorized their imposition.[4]  It is inconceivable that anyone, let alone Jet Blast and Mr. Winch, could have misapprehended Judge Cannon's order.  Second, almost a month after the original payment deadline had passed, Mr. Winch implied that he did not have the financial capacity to pay the sanctions.  *See* ECF No. 62.  Mr. Winch submitted no evidentiary

---

[4] Further, at the hearing held on February 24, 2025, Judge Cannon told Mr. Winch that she planned to "enter an order with regard to the amount of sanctions . . . under Rule 37," ECF No. 81-1 at 29, and thoroughly explained the machinations of Rule 37 sanctions to Mr. Winch, *see, e.g.*, *id.* at 32 ("Under Rule 37, unless there is a substantial justification for not responding, it is an automatic that the party gets . . . sanctioned.").

support for that assertion, and his actions speak louder than his words. *See United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984) (noting that a sanctioned party claiming inability to comply with an order "must go beyond mere assertion of inability and satisfy his burden of production on the point by introducing evidence in support of his claim"). The day after the Court announced it was scheduling a hearing on "Jet Blast's and Mr. Winch's pattern of delay and disregard," ECF No. 73 at 1, Mr. Winch and Jet Blast paid the sanctions ordered by Judge Cannon—106 days late. *See* ECF No. 78 at 1.[5] And, at the July 14, 2025 hearing, Mr. Winch never argued that his or his client's capacity to pay the sanctions (or lack thereof) frustrated their ability to comply with Judge Cannon's deadlines.[6] Third, Jet Blast and Mr. Winch reflexively accused Blue Lake and FPL of "misconduct" and "procedural misuse," to detract from their own failings. There are two problems with this. One is that the record in this matter demonstrates that Blue Lake, FPL, and their respective attorneys have behaved professionally in the face of egregious and

---

[5] Jet Blast's and Mr. Winch's representation that the sanctions have been paid is taken as true, despite lacking any evidentiary support, as Blue Lake and FPL have not contested it. To be sure, the recent payment of the monetary sanctions imposed by Judge Cannon over fourth months ago is no panacea. *See* ECF No. 78. If it were, "malicious actors could repeatedly violate court orders with peace of mind, knowing that any future sanction could be nullified after the fact by simple compliance with the initial order." *See Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024).

[6] Even if Jet Blast and Mr. Winch were not able to pay, Jet Blast and Mr. Winch should have moved for additional time to pay or other relief before the deadline. Instead, they did nothing.

incessant misconduct by their litigation adversary. Two is that Blue Lake's and FPL's alleged skullduggery, as articulated by Mr. Winch and Jet Blast, is untethered to (and therefore does not explain) any of the misconduct detailed above.

The Federal Rules of Civil Procedure and this Court's inherent authority provide ample tools to compel compliance with Court Orders and quell unruly litigants. For example, "Rule 41(b) authorizes a district court to dismiss a complaint for failure to prosecute or failure to comply with a court order or the federal rules." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999). Dismissal with prejudice, however, is "a sanction of last resort," and is only proper if there is (i) a clear record of delay or willful conduct; and (ii) a finding that lesser sanctions are inadequate to correct that conduct. *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006). Likewise, district courts possess the "inherent power to . . . sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013). Courts must exercise their inherent powers with caution and with an eye towards "vindicating judicial authority without resorting to a contempt of court sanction and making the prevailing party whole." *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citation modified). The exercise of a court's inherent power always requires

finding that a party or attorney acted in bad faith. *Yaffa v. Weidner*, 717 F. App'x 878, 885 (11th Cir. 2017).

For too long, Jet Blast and Mr. Winch have been operating under the gravely mistaken assumption that Court Orders and the Federal and Local Rules are pliable—mere recommendations with options they may pick from. That stops now. The Court has carefully considered the panoply of available sanctions. On the one hand, Jet Blast's and Mr. Winch's pattern of flagrant disregard for rules and procedure, in the face of countless warnings, surely could support an order dismissing this case with prejudice. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."). Indeed, in over two decades on the bench, the undersigned has rarely, if ever, witnessed such an appalling indifference—even contempt for—the rules governing discovery and the Orders of this Court. On the other hand, however, the Court is generally loath to dismiss a case based on anything other than the merits or pleading requirements. For that reason, despite the Court's reservations about Jet Blast's capacity and willingness to obey orders, rules, and procedures going forward, the Court will not dismiss this action—for now. Any further transgressions, though, and the Court will not hesitate to do so.

CASE NO. 3:24-cv-469-MCR-HTC

Page 11 of 13

Still, Jet Blast's and Mr. Winch's misconduct must be dealt with in some manner. Therefore, pursuant to its inherent authority, the Court will double the prior sanctions and impose a $15,000 fine payable to the Court. *See Yaffa*, 717 F. App'x at 884–85 (affirming $5,000 fine, "a relatively modest amount," payable to the court when an attorney "repeatedly failed to comply with court orders and deadlines"); *see also United States v. Kouri-Perez*, 187 F.3d 1, 10 n.5 (1st Cir. 1999) ("Courts frequently have grounds for directing payment of non-contempt fines into the registry of the court." (citation modified)) (collecting cases).[7]  Jet Blast and Mr. Winch will split this fine, meaning each will be independently responsible to pay $7,500. *See Hornady*, 118 F.4th at 1378 ("It is generally not an abuse of discretion to charge parties personally with the consequences of the acts or omissions of their

---

[7] Alternatively, these sanctions are authorized by Federal Rule of Civil Procedure 37(b)(2), which allows courts to issue "just orders" when "a party . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2).  Rule 37 grants district court judges broad discretion to fashion appropriate sanctions for the violation of discovery orders. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).  Rule 37 sanctions may be imposed for noncompliance with a court order notwithstanding a lack of willfulness or bad faith by the disobedient party. *See BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1053 (11th Cir. 1994) (noting that only when a court imposes the most severe sanctions—dismissal or default judgment—is a finding of willfulness or bad faith failure to comply necessary). They may be designed to "(1) compensate the court and other parties for the added expense caused by the abusive conduct; (2) compel discovery; (3) deter others from engaging in similar conduct; and (4) penalize the guilty party or attorney." *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985) (citation modified).  Deterrence is necessary because "it is not the court's function to drag a party kicking and screaming through discovery." *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 134 (S.D. Fla. 1987).

freely selected agent . . . . To hold otherwise would be wholly inconsistent with our system of representative litigation." (citation modified)).

The sanctions imposed through this Order are the bare minimum needed to preserve the authority of the Court, dissuade other actors from engaging in a similar pattern of willful misconduct, and account for the precious judicial resources that Jet Blast and Mr. Winch have squandered. Today's ruling should end this regrettable chapter. It is no longer Groundhog Day. From here on out, the choice for Jet Blast and Mr. Winch is simple: pay the monetary sanctions and fall in line or see Jet Blast's case dismissed with prejudice. For Mr. Winch, noncompliance with this Order will further result in a referral to the Louisiana Bar, a revocation of his *pro hac vice* admission in this action, and a five-year ban on practicing *pro hac vice* in the Northern District of Florida. Accordingly, it is **ORDERED** that:

1. A fine of $7,500 is imposed on Mr. Winch, individually, for his pattern of delay, noncompliance, and total disregard of the Court's Orders and deadlines, payable to the Clerk of Court. The fine is due to be paid on or before **July 28, 2025**.

2. A fine of $7,500 is imposed on Jet Blast, individually, for its pattern of delay, noncompliance, and total disregard of the Court's Orders and deadlines, payable to the Clerk of Court. The fine is due to be paid on or before **July 28, 2025**.

**DONE AND ORDERED** this 17th day of July 2025.

*M. Casey Rodgers*
───────────────────────
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**